UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                      Case No.: 8:23-cv-1293-TPB-UAM

SUSAN A. VOSHELLE, et al.,

    Defendants.
_____/

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

    This matter is before the Court on cross motions for summary judgment. On February 20, 2024, Defendant Susan A. VoShelle filed a motion for summary judgment. (Doc. 23). On February 28, 2024, Defendant George E. Heck ,Jr. filed a motion for summary judgment. (Doc. 24). On March 8, 2024, Plaintiff United States of America filed its motion for summary judgment. (Doc. 26). Defendant Victora A. Hudnall did not file a motion. The Government filed a consolidated response in opposition to the VoShelle and Heck motions. (Doc. 27). Defendants did not file responses in opposition. Upon review of the motions, response, court file, and the record, the Court finds as follows:

**Background**

    As Benjamin Franklin once remarked, "nothing is certain except death and taxes." This case is about the tax liability of Defendant Susan A. VoShelle and her efforts to avoid that liability by transferring real property to her son and daughter.

Because the material facts are undisputed, the Court is able to determine the tax liability and its implications with certainty.

Defendant Susan A. VoShelle, formerly known as Susan Sperl, worked for many years as a tax return preparer and was the owner of SusanTax, an accounting-services firm. However, she did not keep up with her obligation to file her personal tax returns – she did not file any for the 1991 through 1996 tax years. On or about September 17, 2002, VoShelle late filed Form 1040, her individual income tax return, for her 1997 through 2001 tax years. On each Form 1040, VoShelle claimed a large deduction for a net operating loss incurred in or about 1990 or 1991.

In 2001, the Internal Revenue Service began a civil examination of VoShelle's federal income tax returns for her 1997 through 2001 tax years, using the bank deposits method of proving income. As part of the civil examination, VoShelle met with the assigned revenue agent, reviewing her records in an effort to substantiate her late filed tax returns for the years at issue. Following these meetings, the IRS prepared a Form 4549A (Income Tax Examination Changes) to explain the proposed changes to VoShelle's tax returns for the 1997 through 2001 tax years, which included additional tax, fraud penalties pursuant to 26 U.S.C. § 6663, and interest. At some point during this process, VoShelle was referred for criminal investigation. In 2004, the IRS placed her civil examination into "fraud suspense," which suspends the civil examination until the criminal aspects of the case have been completed.

On April 11, 2007, a federal grand jury in the Middle District of Tennessee returned a nine-count indictment against VoShelle for her role in preparing abusive tax schemes, preparing and filing fraudulent tax returns, and setting up bogus offshore accounts to intentionally avoid payment of federal taxes. Following a jury trial on two counts and a bench trial on the remaining five counts, VoShelle was convicted of conspiracy to commit tax fraud, aiding or assisting in the preparation of false tax returns, and filing a false income tax return. On June 16, 2020, she was sentenced to three years prison. *See United States v. Susan Sperl*, No. 3:07-CR-00078 (M.D. Tenn.), *aff'd United States v. Sperl*, 458 F. App'x 535, 537-40 (6th Cir. 2012).

After the conclusion of the criminal case, the IRS resumed the civil examination of VoShelle's federal income tax returns for the 1997 through 2001 tax years. The revenue agent prepared another Form 4549A to explain the proposed changes. The IRS subsequently determined and assessed VoShelle's tax liability for the 1997 through 2001 tax years in accordance with its notice and deficiency procedures.

During this process, on or about April 10, 2014, VoShelle purchased a residential piece of real property located at 9129 Eldridge Road, Spring Hill, Florida 34608 (the "subject property"). Before purchasing the subject property, VoShelle had lived in a house located at 348 Florian Way in Spring Hill, Florida. The Florian Way house was originally purchased by Defendant George Heck, Jr., her son. The Florian Way house was damaged by a sinkhole, and Heck granted VoShelle a power

of attorney that allowed her to control the insurance claim and settlement related to the sinkhole. VoShelle purchased the subject property using funds from the sinkhole insurance settlement of the Florian Way house, and Heck did not file a lien or purchase money mortgage on the subject property. The subject property was originally titled in VoShelle's name only.

A few months after she purchased the subject property, on July 2, 2014, VoShelle filed a deed conveying remainderman interest in the subject property to Heck and to Defendant Vitoria Hudnall, her daughter, while retaining an enhanced life estate for herself. This "Lady Bird Deed" was recorded on July 2, 2014, in Hernando County, Florida. VoShelle admitted that she filed the Lady Bird Deed, at least in part, to frustrate the IRS's efforts to collect her unpaid federal tax liabilities through the subject property. (Doc. 26-7 at 147:2-148:9, 152:9-15).[1]

The IRS filed a Notice of Federal Tax Liens ("NFTL") against VoShelle for the assessed tax liability, interest, and statutory additions in Hernando County, Florida. The first NFTL was recorded on July 14, 2014. The IRS later filed a NFTL against the Susan A. VoShelle Life Estate as the nominee of Susan A. VoShelle for the assessed tax liability, interest, and statutory additions in Hernando County, Florida. This NFTL was recorded on September 26, 2016.

Despite notices of assessment and demand for payment, VoShelle has refused or neglected to pay all of the assessed tax liabilities, interest, and penalties. As of

---

[1] VoShelle believed that with the Lady Bird Deed, when she died, her debt with the IRS would "go away" and that the IRS would not be able to pursue the subject property, or Heck or Hudnall, to collect the unpaid taxes.

March 1, 2024, the United States claims that VoShelle owes $433,601.33, including fees and statutory additions as provided by law, and less any payments or other credits for her unpaid federal income tax liabilities for the 1997 through 2001 tax years.

## **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary judgment is not defeated by the existence of a factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Only the existence of a genuine issue of material fact will preclude summary judgment. *Id.*

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

The standard for cross-motions for summary judgment is not different from the standard applied when only one party moves for summary judgment. *Am.*

*Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion separately, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017 (5th Cir. 1975)).

## Analysis

### *Presumptive Validity of Tax Assessments*

A federal tax assessment is a "determination that a taxpayer owes the Federal Government a certain amount of unpaid taxes," and it "is entitled to a legal presumption of correctness." *See United States v. For D'Italia, Inc.*, 536 U.S. 238 242 (2002). To reduce a tax assessment to judgment, the United States must show that the assessment was properly made. *United States v. White*, 466 F.3d 1241, 1248 (11th Cir. 2006). Once the Government establishes its prima facie case, the burden shifts to the taxpayer to prove the assessment is incorrect or arbitrary. *See Olster v. Comm'r*, 751 F.2d 1168, 1174 (11th Cir. 1985) (citing *Mersel v. United States*, 420 F.2d 517, 520 (5th Cir. 1969)).

Here, the Government has made a prima facie showing that the IRS properly made the assessments with a "Certificate of Assessments, Payments, and Other Specified Matters," also known as Form 4340. *See* (Doc. 26-2); *United States v.*

*Chila*, 871 F.2d 1015, 1017-18 (11th Cir. 1989), *cert. denied*, 493 U.S. 975 (1989) ("[A] Certificate of Assessments . . . provide all the information called for in the statute, i.e., identification of the taxpayer, the character of the liability assessed, the taxable period, and the date and amount of the assessment . . . [and] is presumptive proof of a valid assessment.").[2] There is no genuine dispute as to the presumptive validity of the tax assessments against VoShelle.[3]

The burden therefore shifts to Defendants to demonstrate that the assessments are arbitrary or incorrect. VoShelle and her children have submitted no evidence to challenge or rebut these assessments. VoShelle's own testimony establishes that the examination procedure was thorough – the revenue agent who reviewed her bank records spent "days" going through the record with VoShelle. (Doc. 26-7 at p. 101:4-20). VoShelle has not produced any records to substantiate the net operating losses or other deductions she claimed. Instead, she makes broad and unsupported conspiracy claims while attempting to relitigate her criminal

---

[2] This presumption of correctness also extends to penalties and interest arising from unpaid taxes, which are statutorily considered "taxes" for the purposes of tax assessment. *See* 26 U.S.C. § 6665(a)(2). The presumption of correctness extends to both self-reported liabilities and to assessments generated by the IRS through examination procedures. *McKenny v. United States*, 973 F.3d 1291, 1296 (11th Cir. 2020) (citing *Welch v. Helvering*, 290 U.S. 111, 115 (1933)).

[3] Because the assessments are based on the IRS's calculation of VoShelle's income, the United States also submitted evidence to link VoShelle to income-generating activity. *See Williams v. Comm'r*, 999 F.2d 760, 763-64 (4th Cir. 1993) (explaining that the government had to produce evidence linking the taxpayer to illegal sources of income); *Anastasato v. Comm'r*, 794 F.2d 884, 887 (3d Cir. 1986) (presumption arises if there is foundational evidence linking the taxpayer with income-generating activity). The burden to do so is minimal. *See United States v. Moore*, No. 4:18-cv-22, 2019 WL 2051959, at *4 (E.D. Va. Mar. 6, 2019). The United States filed its examination report to show its calculation of VoShelle's income and tax liability for the years at issue. The Forms and examination report, considered with VoShelle's own testimony that she worked as a tax return preparer during the years at issue, indisputably link VoShelle with income-generating activities.

convictions.  Consequently, the Court concludes that the tax assessments at issue in this case are valid.

*Timeliness of Assessments*

Generally, the IRS must assess tax within three years of the filing of a tax return.  26 U.S.C. § 6501(a).  However, in "the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed . . . at any time."  26 U.S.C. § 6501(c)(1).

Here, it is undisputed that the IRS assessed the taxes at issue more than three years after VoShelle filed the returns at issue.  But it is also undisputed that VoShelle's returns were fraudulent.[4]  During the civil examination to determine tax liabilities, based on her conduct and knowledge as a tax preparer, the IRS determined that VoShelle had fraudulent intent to underreport the tax liability amount owed for each of the years at issue, and subsequently assessed fraud penalties pursuant to 26 U.S.C. § 6663.

Defendants do not argue or present any evidence that VoShelle's 1997-2001 tax year returns were not fraudulent.  Furthermore, the undisputed facts demonstrate a fraudulent intent through VoShelle's attempt to claim large net operating loss deductions to extinguish any tax liability she may have owed on her taxable income for the years at issue.  Given VoShelle's extensive history working as a tax return preparer, she was most certainly aware of the requirements for

---

[4] The Court notes that VoShelle was criminally prosecuted and served time in prison for crimes relating to her fraudulent preparation of tax returns for her clients.  However, the charges related to VoShelle's own fraudulent tax returns were dismissed.  *See United States v. Sperl*, 458 F. App'x 535, 537-40 (6th Cir. 2012).

claiming net operating losses and other tax deductions but did not comply with those requirements.

Because the IRS may assess tax at any time in the case of a fraudulent return, Defendants' argument that the assessments were untimely fails.

***Enforceability of Tax Liens on Subject Property***

When the federal income taxes were assessed against VoShelle, statutory liens arose in favor of the United States and attached to all property and rights to property belonging to her, and the liens continue in effect until the underlying tax debt has been satisfied or becomes unenforceable by the passage of time. 26 U.S.C. §§ 6321, 6322. Because VoShelle still owes money to the United States, the statutory liens have not been satisfied. Although Defendants argue that the liens are unenforceable by the passage of time due to the statute of limitations, such argument is misplaced. The United States commenced this suit within ten years of the assessment date, which is within the statute of limitations on collection.[5] Therefore, the United States has valid and enforceable statutory liens against VoShelle that attach to all her property and rights to property, including the subject property.

Defendants argue that the tax liens cannot attach to the subject property because VoShelle conveyed title through the Lady Bird Deed before the IRS filed the first NFTL. However, this argument ignores the statutory lien – the subject property was titled in VoShelle's sole name at the time the taxes were assessed, and

---

[5] The Court notes that the statute of limitations is a deadline for commencing an action, not a deadline for completing a case.

as a result of the assessment, a statutory lien arose and attached to all property, including the subject property. That lien therefore existed before the property was transferred.

Defendants appear to argue that the statutory lien was not valid against Heck and Hudnall as "purchasers" because the Secretary had not yet filed a NFTL at the time of the transfer. It is generally true that a statutory lien is not valid against any purchaser until the Secretary has filed a NFTL. 26 U.S.C. § 6323(a). A "purchaser" is defined as "a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice." 26 U.S.C. § 6323(h)(6). However, significantly here, VoShelle's transfer of the property through the Lady Bird Deed was for little or no consideration. The deed itself indicates that the property was transferred without consideration. (Doc. 26-6). Moreover, according to VoShelle's own testimony, neither Heck nor Hudnall gave her money or anything of value in exchange for receiving the remainderman interest in the subject property.[6] (Doc. 26-7 at 146:25-147:18, 150:2-151:16, 151:21-153:6).

Furthermore, the timing of the Lady Bird Deed demonstrates that the transfer of the property was part of VoShelle's efforts to prevent the IRS from collecting her unpaid tax liabilities. VoShelle originally purchased the subject

---

[6] Although Heck claims he provided VoShelle with the money to purchase the subject property, he has not provided any evidence to establish this money was anything other than a gift to his mother.

Page 10 of 14

property, which was titled in only her name, on April 10, 2014. Months later, she executed the Lady Bird Deed transferring remainderman interests to Hudnall and Heck. VoShelle herself testified that the property transfer was to frustrate the IRS's collection efforts. (Doc. 26-7 at 147:2-148:9, 152:9-15).

Consequently, the undisputed facts show that the transfer of the remainderman interest to Hudnall and Heck in the Lady Bird Deed was not in exchange for full consideration, so Hudnall and Heck do not qualify as "purchasers" under 26 U.S.C. § 6323(h)(6). As such, the United States has valid and enforceable statutory tax liens against Defendants that attach to the subject property.

***Other Arguments***

Defendants raise a few other arguments to challenge the Government's tax assessments, but these arguments are unpersuasive and do not warrant much discussion.

Although Heck argues, for instance, that he and Hudnall were improperly sued as defendants in the present case because they do not hold a present interest in the subject property, the Government properly included them as defendants who may claim an interest in the subject property. *See* 26 U.S.C. § 7403(b). The Court may therefore determine whether their interests are encumbered by the federal tax liens against VoShelle.

Defendants' argument that the United States failed to disclose that the IRS civil examination was placed in fraud suspense is unsupported by the record and untrue. *See* (Docs. 23; 24).

Despite Defendants' arguments to the contrary, the initial closure of the civil examination due to the fraud suspension procedure did not mean that the IRS concluded that VoShelle's tax returns were not fraudulent – it left this issue open for future determination and suspended the civil examination until resolution of the criminal investigation. The civil examination resumed once it was moved out of fraud suspension, and the fraud suspension procedure does not in any way render the assessments untimely.

An argument has been raised that VoShelle did not consent to extend the statute of limitations on assessments. This argument has no merit. VoShelle did not need to consent to extend the statute of limitations on assessments – consent is not necessary in the case of a false or fraudulent tax return, which may be assessed at any time.

And finally, although VoShelle tries to relitigate her criminal case, her prior criminal case did not involve any determination of her tax liabilities in this case, and that case does not preclude the IRS from issuing a notice of deficiency for the tax years at issue and making assessments.

## Conclusion

The facts demonstrate, conclusively, that VoShelle has tried to prevent the IRS from collecting a valid tax liability by conveying a residence worth several hundred thousand dollars to her son and daughter via a Lady Bird Deed. VoShelle has failed.

Defendants have not shown they are entitled to summary judgment on any

issue in this case. As such, the defense motions filed by VoShelle and Heck are denied.

Moreover, based on the undisputed material facts, the United States has established that the IRS timely assessed the tax liabilities, penalties, and interest for VoShelle's 1997-2001 tax years, that the United States has valid and enforceable statutory liens against VoShelle that attach to the subject property, and that any interest Hudnall and Heck claim in the subject property is encumbered by the tax liens for VoShelle's unpaid tax debts, interest, and penalties for the 1997 through 2001 tax years. Consequently, the United States is entitled to summary judgment on its complaint to collect unpaid federal income tax liabilities and to declaratory judgment that the federal tax liens are enforceable against the subject property.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendant Susan VoShelle's motion for summary judgment (Doc. 23) is **DENIED**.

(2)   Defendant George E. Heck, Jr.'s motion for summary judgment (Doc. 24) is **DENIED**.

(3)   "United States' Motion for Summary Judgment and Memorandum of Law in Support" (Doc. 26) is **GRANTED**.

(4)   Susan A. VoShelle is liable in the amount of $433,601.33, as of March 1, 2024, for unpaid federal income tax liabilities for the 1997 through 2001 tax years, plus fees, statutory additions, and interest under 26 U.S.C. §§ 6621

and 6622, until paid.

(5)     The United States has valid and enforceable tax liens against Susan A. VoShelle.

(6)     The United States' federal tax liens against Susan A. VoShelle attach to the subject property located at 9129 Eldridge Rd., Spring Hill, Florida 34608.

(7)     Any interest George E. Heck, Jr. and Victoria A. Hudnall claim to the subject property is encumbered by the tax liens for Susan A. VoShelle's unpaid tax debts, interest, and penalties for the 1997 through 2001 tax years.

(8)     The United States is directed to submit a proposed final judgment on or before April 17, 2024.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>4th</u> day of April, 2024.

 

 

_____
**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**